COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-07-329-CV

 

FIELDTECH AVIONICS & INSTRUMENTS,                               APPELLANTS

INC.,
KEVIN NELMS, AND DAVID MILLS

 

                                                   V.

 

COMPONENT CONTROL.COM, INC.,                                        APPELLEES

D/B/A
COMPONENT CONTROL; 

CITICAPITAL
TECHNOLOGY FINANCE, 

INC.,
D/B/A BANKERS LEASING; AND 

CITICORP
USA, INC., D/B/A CITICAPITAL, 

CITICAPITAL
TECHNOLOGY FINANCE, 

INC.,
BANKERS LEASING, AND SOFTECH 

FINANCIAL

 

                                              ------------

 

           FROM
THE 236TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








Appellants Fieldtech Avionics
& Instruments, Inc., Kevin Nelms, and David Mills appeal from the trial
court=s grant of summary judgment in favor of Appellees (1) Component
Control.Com, Inc., d/b/a Component Control; and (2) CitiCapital Technology
Finance, Inc., d/b/a Bankers Leasing and Softech Financial, and CitiCorp USA,
Inc., d/b/a CitiCapital, CitiCaptial Finance, Inc., Bankers Leasing, and
Softech Financial (collectively, CitiCapital). 
We reverse in part and affirm in part.

                                            Background








Fieldtech is an avionics
parts supplier.  Component Control is a
commercial software company.  On August
24, 2001, Fieldtech signed a proposal generated by Component Control to acquire
AQuantum Control Software 2K.4@ (Athe software@) from Component Control. 
Fieldtech financed the transaction through a finance lease agreement
with CitiCapital whereby CitiCapital acquired the software from Component
Control and  leased it to Fieldtech.  Nelms and MillsCFieldtech=s president
and secretary, respectivelyCpersonally guaranteed the lease. 
The transaction involved several documents:  the proposal; a software maintenance
agreement; the lease agreement and an associated property schedule and
certificate of acceptance; and a Aclickwrap agreement,@ an electronic agreement provided by Component Control that Fieldtech
had to accept before it could download and install the software.[1]  We will examine the relevant documents and
testimony concerning their execution later in this opinion.

Fieldtech allegedly learned
that the software was incompatible with its business operations when it sent
two employees to Component Control for software training in January 2002.  Fieldtech sued Component Control and
CitiCapital in October 2003.  Fieldtech
sued Component Control for breach of contract, breach of warranty, and
violations of the Deceptive Trade Practices Act, alleging that Component
Control had represented that the software would meet Fieldtech=s business needs.  Fieldtech
sued CitiCapital for breach of contract and for a declaratory judgment, seeking
a declaration of its rights under its lease agreement with CitiCapital.  CitiCapital filed a counterclaim against
Fieldtech and third-party claims against Nelms and Mills, seeking to enforce
the lease and Nelms=s and Mills=s guarantees. 








After nineteen months of
discovery, CitiCapital filed no-evidence and traditional motions for summary
judgment, and Component Control filed a combined no-evidence and traditional
motion for summary judgment.  Fieldtech
filed timely summary judgment responses. 
The trial court eventually granted summary judgment in favor of
Component Control and CitiCapital and awarded CitiCapital $95,105.55 in damages
and $28,205.83 in attorney=s fees. Fieldtech, Nelms, and Mills filed this appeal.

                                Summary Judgment Evidence

The parties presented the
following relevant summary judgment evidence to the trial court.

1                   
Component Control=s
proposal

Component Control=s
proposal is a one-page printed document listing the software, software modules,
installation, training, and maintenance to be provided by Component Control and
the price for each item, with a total quote of $86,224.94.  The area labeled A[p]lease
sign to confirm your order@
was signed by David Mills on August 24, 2001, and a line labeled Acheck here for third-party leasing@ was checked. 

2                   
The clickwrap license agreement








Lisa Wortman, Component Control=s director of contract administration,
averred that when a user attempts to install the software on a computer, a
clickwrap license agreement appears on the computer screen, and the software will
not install unless the user signifies acceptance of the license agreement.
Wortman attached two versions of the license agreement to her affidavit.  The first version is printed on Component
Control letterhead; the second version, said Wortman, is the actual clickwrap
agreement that would have appeared on Fieldtech=s
computer screen.  The two versions are
identical except that the former contains headings in bold type and the latter
does not.  Both versions contain the
following warranty provisions:

6.3
Limited Warranty Remedies:  During a
period of thirty (30) days after delivery of the Software to Licensee, if the
Licensee claims that the software is defective, Licensor shall either (i)
replace such Software, provided that upon inspection by Licensor, Licensor has
found the Software to be defective, or (ii) refund the amount paid therefor, if
the Licensee returns the defective software to the Licensor with a copy of
proof that the warranty period has not expired, and Licensor has verified the
defect.  Licensee agrees that Licensee=s sole and exclusive remedy hereunder
shall be limited to this corrective action.

 

6.4
Warranty Disclaimer: The express warranties set forth in the Agreement are in
lieu of all other warranties, express or implied, including, without
limitation, any warranties of merchantability or fitness for a particular
purpose.

 








6.5
Limitation of remedies: Licensee agrees that its exclusive remedies, and
Licensor=s entire
liability with respect to the Software, shall be as set forth herein.  Licensee further agrees that Licensor shall
not be liable to Licensee for any damages, including any lost profits, lost
savings, or other incidental or other consequential damages arising out of its
use or inability to use the Software or the breach of any express or implied
warranty, even if Licensor has been advised of the possibility of those
damages. 

 

3                   
Master Lease Agreement

CitiCapital and Fieldtech executed a Master Lease Agreement
setting out the terms under which CitiCapital leased the software to
Fieldtech.  Fieldtech agreed to make
monthly lease payments of $3,528.85 for thirty months.  The lease agreement contains the following
relevant language:

1.  LEASE. 
LESSOR hereby leases and/or grants to LESSEE the right to use, and
LESSEE hereby leases from and/or agrees to accept the right to use, subject to
the terms and conditions herein set forth, the item(s) of personal property
including but not limited to the hardware and/or software herein referred to as
AProperty@
. . . .  Each Property Schedule
entered into by the parties shall constitute a separate non-cancellable lease
agreement . . . .  

 

. . . .

 








4.  DISCLAIMER OF WARRANTIES. (A) LESSEE
ACKNOWLEDGES THAT LESSEE MADE THE SELECTION OF THE PROPERTY BASED ON ITS OWN
JUDGMENT AND IS NOT RELYING ON LESSOR=S
SKILL OR JUDGMENT TO SELECT OR FURNISH GOODS SUITABLE FOR ANY PARTICULAR
PURPOSE.  LESSEE ACKNOWLEDGES THAT LESSOR
HAS NOT MADE AND DOES NOT MAKE ANY WARRANTIES, EXPRESS OR IMPLIED, DIRECTLY OR
INDIRECTLY, INCLUDING, WITHOUT LIMITATION, THE WARRANTY OF MERCHANTABILITY AND
OF FITNESS, CAPACITY OR DURABILITY FOR ANY PARTICULAR PURPOSE, AND WARRANTIES
AS TO THE DESIGN OR CONDITION OF THE PROPERTY AND THE QUALITY OF THE MATERIAL
OR WORKMANSHIP OF THE PROPERTY.  LESSOR
SHALL HAVE NO LIABILITY TO LESSEE FOR ANY CLAIM, LOSS OR DAMAGE OF ANY KIND OR
NATURE WHATSOEVER, INCLUDING ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES,
TO ANY EXTENT WHATSOEVER, RELATING TO OR ARISING OUT OF THE SELECTION, QUALITY,
CONDITION, MERCHANTABILITY, SUITABILITY, FITNESS, OPERATION OR PERFORMANCE OF
THE PROPERTY.  NO DEFECT IN OR UNFITNESS
OF THE PROPERTY SHALL RELIEVE LESSEE OF ITS OBLIGATIONS UNDER THE
LEASE. . . .

 

(B) For the term of the LEASE, or any extension
thereof, LESSOR hereby assigns to LESSEE and LESSEE may have the benefit of any
and all Vendor=s
warranties . . . if any, with respect to the Property to the extent
assignable by LESSOR, provided, however, that LESSEE=S
sole remedy for the breach of any such warranty . . . shall be against
the Vendor and not against the LESSOR, nor shall any such breach have any
effect whatsoever on the rights and obligations of either party with respect to
the LEASE.

 

5.  STATUTORY FINANCE LEASE.  LESSEE agrees and acknowledges that it is the
intent of both parties to the LEASE that it qualify as a statutory finance
lease under Article 2A of the Uniform Commercial Code.  LESSEE acknowledges and agrees the LESSEE has
selected both: (1) the Property; and (2) the Vendor from whom the property is
to be acquired.  LESSEE acknowledges that
LESSOR has not participated in any way in LESSEE=S
selection of the Property or of the Vendor, and LESSOR has not selected,
manufactured, or supplied the Property.

 

LESSEE
IS ADVISED THAT IT MAY HAVE RIGHTS UNDER THE CONTRACT EVIDENCING THE
ACQUISITION OF THE PROPERTY FROM THE VENDOR CHOSEN BY THE LESSEE AND THAT
LESSEE SHOULD CONTACT THE VENDOR OF THE PROPERTY FOR A DESCRIPTION OF ANY SUCH
RIGHTS. 

 

. . . .

 

18.  DEFAULT. 
. . . If LESSEE fails to pay any rent or other amounts
required . . . LESSOR or its agents shall have the right
. . . to declare the entire amount of rent hereunder immediately due
and payable . . . .

 








To the extent permitted by applicable law, the
LESSEE waives any and all rights and remedies conferred upon a LESSEE by UCC
Sections 2A-508 through 2A-522, including (without limitation) the LESSEE=S rights to (a) cancel or repudiate the
LEASE, (b) reject or revoke acceptance of the leased Property, (c) recover
damages from LESSOR for breach of warranty or for any other reason
. . . .  

. . . .

 

22.  NET LEASE.  The LEASE is a net lease and LESSEE agrees
that its obligation to pay all rent and other sums payable thereunder are
absolute and unconditional and shall not be subject to any abatement,
reduction, setoff, defense, counterclaim or recoupment for any reason
whatsoever. 

 

. . . .

 

27.  ENTIRE AGREEMENT, WAIVER.  This Instrument constitutes the entire agreement
between the parties. 

 

4                   
Certificate of Acceptance

Kevin Nelms, as Fieldtech=s
president, executed a document provided by CitiCapital and titled ACertificate of Acceptance@ on October 19, 2001, which provides,

We
certify that [the software] was delivered to and installed at [Fieldtech] in
good order and condition and acceptable to us, is ready for its intended use as
of the date hereof, and is acceptable for maintenance by the maintenance
provider, and the quantity, description and serial numbers are correct. 

 

5                   
Kevin Nelm=s
affidavit








Nelms averred that Component Control contacted
Fieldtech beginning in 2001 to sell software to Fieldtech.  Nelms stated that Fieldtech communicated the
nature of its business to Component Control, including its need for software
that would allow Fieldtech to quickly and easily provide quotes to customers
and access customers=
historical purchasing records for credit evaluations. According to Nelms,
Component Control represented that its software would be useful to Fieldtech
and would work in Fieldtech=s
business environment. Nelms averred that the only reason Fieldtech agreed to
lease the software was because Component Control represented that it would work
for Fieldtech.[2]

Nelms stated that when Fieldtech signed the
proposal and software maintenance agreement on August 24, 2001, it did not
intend that the proposal be a complete and exclusive expression of the
agreement between the parties but Amerely
a business confirmation from Component Control created for its internal
purposes and to confirm that an agreement had been reached.@ 
Shortly after Fieldtech signed the proposal, Component Control delivered
the software, but Nelms said that Fieldtech did not begin Aany real use@
of the software until it completed CitiCapital=s
financing documents six weeks later. 
Nelms signed a Master Lease Agreement with CitiCapital on September 24,
2001. 








Nelms acknowledged that he signed a ACertificate of Acceptance@ sent to Fieldtech by CitiCapital and
that the certificate indicated that the Asoftware
was considered placed in service on October 19, 2001,@
but he averred that Fieldtech did not Ause
the software in any sense through the remainder of 2001@
because Fieldtech was arranging software training with Component Control.  Nelms said that he signed the certificate merely
to acknowledge receipt of the software and that he did not intend to
acknowledge that the software fully satisfied Component Control=s agreements and representations. Nelms
stated that he Afelt
assured@ that
CitiCapital=s intent
was to finance software that Fieldtech actually needed.  Nelms said that CitiCapital and Component
Control both assured him that Fieldtech would not be obligated for the whole
proposal amount unless and until the software was working for Fieldtech and
Component Control had provided the necessary services.








Nelms averred that two Fieldtech employees
attended a software training class at Component Control in January 2002.  He stated that after two days of the five-day
class, the employees realized that the software would not work for Fieldtech
because it would not allow Fieldtech to quickly quote prices to potential customers.  Nelms said that he communicated to Component
Control the fact that the software would not work for Fieldtech and that he
considered such communication to be notice revoking any acceptance of the
software that Fieldtech had given.

Nelms stated that he did not remember whether the
clickwrap agreement appeared when Fieldtech installed the software but that he
had no specific reason to believe that it did not appear.

6                   
Affidavit of Carol Beckham

Carol Beckham, Fieldtech=s
accounts manager, averred that she was one of the two Fieldtech employees who
attended Component Control=s
software training class in January 2002. 
She stated that after two days of training, it was apparent to her that
the software would not work for Fieldtech. 
Beckham said that she communicated to Component Control and CitiCapital
that the software would not work for Fieldtech and was not what Fieldtech
needed.  Her affidavit lists by date and
amount the nine payments Fieldtech made to CitiCapital under the lease. 

                                                             Standards
of Review








When a party moves for both a
traditional summary judgment under rules166a(c) and a no-evidence summary
judgment under rule 166a(i), we first review the trial court=s judgment under the standards of rule 166a(i).  Ford Motor Co. v. Ridgway, 135 S.W.3d
598, 600 (Tex. 2004).  If the nonmovant
failed to produce more than a scintilla of evidence under that burden, then
there is no need to analyze whether appellee=s summary judgment proof satisfied the less stringent rule 166a(c)
burden.  Id.

1.     No-evidence summary judgment

After an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207
(Tex. 2002).  The trial court must grant
the motion unless the nonmovant produces summary judgment evidence that raises
a genuine issue of material fact.  See
Tex. R. Civ. P. 166a(i) &
cmt.; Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no-evidence
summary judgment, we examine the entire record in the light most favorable to
the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.  Sudan v. Sudan,  199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no-evidence summary judgment is not proper.  Moore v. K Mart Corp., 981 S.W.2d 266,
269 (Tex. App.CSan Antonio
1998, pet. denied). 

 








2.     Traditional summary
judgment

A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004); see Tex. R.
Civ. P. 166a(b), (c).  When
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, and we indulge every reasonable inference and resolve any doubts in
the nonmovant=s
favor.  IHS Cedars Treatment Ctr.,
143 S.W.3d at 798. 

A plaintiff or
counterplaintiff is entitled to summary judgment on a cause of action if it
conclusively proves all essential elements of the claim.  See Tex.
R. Civ. P. 166a(a), (c); MMP, Ltd. v. Jones, 710 S.W.2d 59, 60
(Tex. 1986).  When reviewing a
summary judgment, we take as true all evidence favorable to the nonmovant, and
we indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  IHS Cedars
Treatment Ctr., 143 S.W.3d at  798.

                                             Discussion

7.                 
Finance Lease Agreement








Fieldtech and CitiCapital agree that the lease
between them is a statutory finance lease. 
A finance lease is a three‑party transaction governed by article
2A of the Uniform Commercial Code, Tex.
Bus. & Com. Code Ann. Ch. 2A (Vernon 1994 & Supp. 2008).  The UCC defines a finance lease as Aa lease with respect to which
. . . the lessor does not select, manufacture, or supply the goods@; Athe
lessor acquires the goods or the right to possession and use of the goods in
connection with the lease@;
and one of four other conditions is met, i.e., (i) the lessee receives a copy
of the contract by which the lessor acquired the goods or the right to their
use and possession; (ii) the lessee=s
approval of the contract by which the lessor acquired the goods or the right to
their use and possession is a condition to the effectiveness of the lease;
(iii) the lessee, before signing the lease contract, receives a statement
designating the promises and warranties and disclaimers provided to the lessor
by the third-party supplier; or (iv) if the lease is not a consumer lease, the
lessor informs the lessee in writing of (a) the identity of the supplier unless
the lessee has selected the supplier and directed the lessor to acquire the
goods or the right to use and possession, (b) the lessee=s
entitlement to promises and warranties provided to the lessor by the supplier,
and (c) the lessee=s right
to communicate with the supplier and receive the warranties and disclaimers
from it.  Id. ' 2A.103(7) (Vernon Supp.
2008).  The lease in this case meets the
statutory requirements for a finance lease, including the last of the
enumerated conditions.








In a finance lease, the UCC does not imply
warranties of merchantability  and fitness
running from the lessor to the lessee.  Id.
'' 2A.212, 2A.213 (Vernon
1994) (creating implied warranties of merchantability and fitness in lease
agreements A[e]xcept
in a finance lease@).  Instead, A[t]he
benefit of a supplier=s
promises to the lessor under the supply contract and all warranties, whether
express or implied . . . extends to the lessee . . . but is
subject to the terms of the warranty and of the supply contract and all
defenses or claims arising therefrom.@  Id. ' 2A.209(a)
(Vernon Supp. 2007).  Thus, a finance
lessee=s
remedies for defective or nonconforming goods or for breach of warranty run
against the supplier of the goods, not the lessor, and are governed by UCC
article 2.  See id. & cmt.

8.               
Component Control=s motion

In its first issue, Fieldtech
argues that the trial court erred by granting summary judgment in favor of
Component Control because Component Control=s no-evidence motion was procedurally inadequate and because the summary
judgment evidence raises fact issues with regard to all of Fieldtech=s causes of action.

a.                  
Adequacy of no-evidence motion








Fieldtech contends that the no-evidence portion of
Component Control=s summary
judgment motion is procedurally inadequate because it fails to distinguish
between no-evidence and traditional summary judgment grounds and because it
fails to specifically identify the elements of Fieldtech=s
causes of action for which Component Control claims there is no evidence.  Fieldtech raised these alleged procedural
defects in special exceptions filed in the trial court.[3]









A no-evidence motion must state the elements as to
which there is no evidence and must be specific in challenging the evidentiary
support for a claim or defense; rule 166a(i) does not authorize conclusory
motions or general no-evidence challenges to an opponent=s
case.[4]  Tex.
R. Civ. P. 
166a(i) & cmt.  A no‑evidence
challenge that only generally challenges the sufficiency of the nonmovant=s case and fails to state specific elements is fundamentally defective
and insufficient to support summary judgment as a matter of law.  Mott, 249 S.W.3d at 98.  But a specific attack on the evidentiary
components that might prove a certain element is unnecessary, as long as the
element itself is specifically challenged. 
See Timothy Patton,
Summary Judgment in Texas, Practice,
Procedure and Review ' 5.03[2][b] (3d ed. 2006). 
A summary judgment movant may combine no-evidence and traditional
grounds in the same motion.  Binur v.
Jacobo, 135 S.W.3d 646, 650B51 (Tex. 2004).  A motion that
combines both bases for summary judgment is sufficient if it sets forth its
grounds clearly and otherwise complies with rule 166a.  See id. at 651.

With regard to Fieldtech=s breach of contract claim, Component Control argued that Athere is no evidence that Fieldtech did not receive the Software it
leased or that the Software did not perform.@  With regard to alleged DTPA
violations, Component Control argued that Athere is simply no evidence of any misrepresentation or unconscionable
act by Component Control.@  We hold that these no-evidence challenges are
sufficiently specific to pass rule 166a(i) muster.  See Tex.
R. Civ. P. 166a(i) & cmt.  








But with regard to breach of
warranty, after lengthy arguments analyzing the language of the relevant
agreements, Component Control stated conclusorily, AAs a matter of law, therefore, Component Control did not breach an
express warranty and Fieldtech has no evidence to show that it did,@ and AAs a matter
of law, therefore, Component Control did not breach an implied warranty and
Fieldtech has no evidence to show that it did.@  These two statements do not
challenge specific elements of Fieldtech=s breach of warranty claim as required by rule 166a(i); rather, they
are vague and general statements tacked on to the end of the traditional
summary judgment arguments.  We therefore
hold that the no-evidence portion of Component Control=s summary judgment motion dealing with breach of warranty did not
comply with rule 166a(i)=s
requirement for specificity, and we will review the summary judgment relating
to breach of warranty under the traditional summary judgment rules.  See Tex.
R. Civ. P.  166a(c), (i).

b.                 
Breach of contract

Component Control argues that there is no evidence
that it breached its agreement with Fieldtech because Component Control agreed
only to provide and did provide the Quantum Control software to Fieldtech but
did not agree to provide software that would be Auseful@ to Fieldtech or perform the functions
Fieldtech allegedly requires, namely, the ability to look up customers= order histories and quickly generate
quotes.  Fieldtech contends that the
proposal was not a complete agreement and that Fieldtech may therefore rely on
parol evidence to explain the parties=
true agreement. 








The elements of a breach of
contract claim are (1) the existence of a valid contract, (2) performance or
tendered performance by the plaintiff, (3) breach of the contract by the
defendant, and (4) resulting damages to the plaintiff.  Harris v. Am. Prot. Ins. Co., 158
S.W.3d 614, 622B23 (Tex.
App.CFort Worth 2005, no pet.). 
Because Component Control=s no-evidence motion challenged the third element, our analysis will
focus primarily on whether Fieldtech produced any evidence that Component
Control breached its agreement.  But
before we can determine whether Fieldtech presented any evidence of a breach of
the agreement, we must first examine the agreement itself and determine whether
Component Control promised that the software would provide the functionality
required by Fieldtech, namely, the ability to look up a customer=s order history and quickly generate quotes. 

Because Fieldtech=s rights against Component Control are governed by UCC article 2, we
look to article 2 to guide our analysis.  Under article 2, parol evidence of a
contemporaneous oral agreement may explain or supplement, but not contradict,
the terms of a written agreement between the contracting parties unless the
court finds that the parties intended the writing to be a complete and
exclusive statement of the terms of the agreement:








Terms
with respect to which the confirmatory memoranda of the parties agree or which
are otherwise set forth in a writing intended by the parties as a final
expression of their agreement with respect to such terms as are included
therein may not be contradicted by evidence of any prior agreement or of a
contemporaneous oral agreement but may be explained or supplemented

 

(1)
by course of performance, course of dealing, or usage of trade (Section 1.303)
and

 

(2)
by evidence of consistent additional terms unless the court finds the writing
to have been intended also as a complete and exclusive statement of the terms
of the agreement.

 

Tex. Bus. & Com. Code Ann. ' 2.202 (Vernon Supp. 2008).[5]  








We turn now to the writings
at issue with regard to Component Control, the proposal and the clickwrap
agreement.  The first question is whether
the writings were intended as a Acomplete and exclusive statement of the terms of the agreement.@  Tex. Bus. & Com. Code
Ann. ' 2.202.  Neither writing contains an express merger or
integration clause or any language to show that the parties intended either
document to be a complete and exclusive statement of the terms of the
agreement.  Indeed, the fact that
Component Control included the clickwrap agreement in the software indicates
that it did not intend the proposal to be a

 complete
and exclusive statement of the agreement, and the clickwrap agreement itself is
not complete or exclusive because it omits crucial terms, such as price.  Nor do the writings suggest that the parties
intended them to be final expressions of their agreement.  Therefore, Fieldtech may present parol
evidence of contemporaneous oral agreements that explain or supplement the
terms of the proposal and the clickwrap agreement.  See id.

The second question is
whether Fieldtech presented summary judgment evidence explaining or
supplementing the terms of the writings. 
See id.  We look first to
the terms of the writings.  Component
Control=s proposal identifies the software and included software modules by
name and price, but it does not identify or recite any particular features or
functionality of the software.  The
clickwrap agreement likewise identifies the software and included modules but
does not specify any functionality, uses, or benefits of the software.  

Next, we look to the parol
evidence presented by Fieldtech to determine whether it supplements or explains
the terms of the writings.  In his
affidavit, Nelms averred that








In
response [to Nelms=s
discussions with Component Control personnel about the nature of Fieldtech=s
business], these Component Control personnel represented that the software it
was trying to sell Fieldtech would be useful to Fieldtech and would [fulfill
the needs Fieldtech expressed to Component Control].

 

. . . The only reason the agreement was
for AQuantum
Control@
software is that such software was what Component Control represented would
work for Fieldtech.  Fieldtech was not
interested [in leasing], and did not agree to lease, the Quantum Control
software no matter whether or not it was useful to Fieldtech.  Rather, Fieldtech=s
agreement with Component Control was simply to purchase software that was
useful to Fieldtech and effectively met Fieldtech=s
needs. 

 

Nelms=s affidavit supplements, but does not contradict, the terms of the
proposal and the licensing agreement. 
The proposal states that Component Control would provide the software;
Nelms=s affidavit supplements the proposal by explaining what the parties
allegedly agreed the software would actually do.  Thus, Nelms=s affidavit creates a fact issue as to a contemporaneous oral
agreement that supplements the terms of the written agreements between
Fieldtech and Component Control.  See
id.








Finally, we look to Fieldtech=s summary judgment evidence to determine whether it raised a fact
issue as to whether Component Control breached the agreement as supplemented by
Nelms=s affidavit.  Nelms averred that
the software Asimply would
not work for Fieldtech@ becauseCamong other thingsCit requires a user to input Aa myriad of information@ regarding a potential customer before the user can generate a quote
and does not allow a user to access a customer=s historical information.  He
stated that Athe software
did not satisfy what Component Control agreed and represented it would provide
to Fieldtech, and it was not useable for the purposes for which Fieldtech
communicated to Component Control it needed the software.@ 








Component Control argues that
Nelms=s affidavit does not raise a fact issue because he testified in his
deposition that he merely had the Aimpression@ that the
software would do everything Fieldtech wanted it to, Fieldtech could present no
documents containing the software specifications alleged by Nelms,  and Nelms=s affidavit is the self-serving testimony of an interested
witness.  We will consider each of these
three alleged defects in turn.  First, it
is well established that a deposition does not have controlling effect over an
affidavit when determining whether a motion for summary judgment should be
granted.  Davis v. City of Grapevine,
188 S.W.3d 748, 755 (Tex. App.CFort Worth 2006, pet. denied). 
When a deposition and an affidavit filed by the same party in opposition
to a motion for summary judgment conflict, a fact issue is presented that will
preclude summary judgment.  Id.  Thus, to the extent that Component
Control argues that Nelms=s affidavit
conflicts with his earlier deposition testimony, that conflict itself creates a
fact issue.  Second, UCC section 2.201
specifically contemplates parol evidence of contemporaneous oral
agreements to supplement or explain written agreements; thus, no documents are
required to create a fact issue.  See
Tex. Bus. & Com. Code Ann. ' 2.201 (Vernon 1994). 
Third, while testimony from an interested witness cannot serve as a
basis for granting summary judgment in some instances, it is enough to
create a fact issue that justifies denying summary judgment.  AUncontroverted evidence . . . from an interested witness
does nothing more than raise a fact issue unless it is clear, positive and
direct, otherwise credible, and free from contradictions and inconsistencies,
and could have been readily controverted.@  Reynolds v. Murphy, 188
S.W.3d 252, 262 (Tex. App.CFort Worth 2006, pet. denied), cert. denied, 127 S. Ct.
1839.  Because Fieldtech sought to create
a fact issue and defeat summary judgment rather than negate a fact issue and
obtain summary judgment, Nelms=s interested affidavit is competent summary judgment evidence.








Component Control argues that
this case is like BubbaJunk.com, Inc. v. Momentum Software, Inc., in
which the Austin court held that a written but unsigned Asoftware requirements specification@ did not impose additional contractual obligations on a software
developer.  No. 03-03-00590-CV, 2004 WL
904081, at *4 (Tex. App.CAustin Apr.
29, 2004, pet. denied).  In that case, BubbaJunk
and Momentum entered into a written consulting contract in which Momentum
promised to perform software- and Internet-development services described in
two work authorizations attached to and incorporated into the contract.  Id. 
The contract required that changes to the scope of the services be in
writing and executed by both parties.  Id.  When BubbaJunk failed to make payments
under the contract, Momentum sued for breach of contract and eventually moved
for summary judgment on its claim.  Id.
at *3.  BubbaJunk asserted promissory
estoppel as an affirmative defense, alleging that Momentum made additional
promises regarding the scope of its services in an unsigned software
requirements specification.  Id.
at *3, 4.  The court held that because
the software requirements specification was not executed by both parties, it
was not a part of the contract and would not support BubbaJunk=s  promissory estoppel
defense.  Id. at *4.








This case is distinguishable
from BubbaJunk.  The contract in BubbaJunk
was the complete, integrated agreement between the parties.  Neither of the writings in this caseCthe proposal and the clickwrap agreementCis a complete expression of the parties= agreement, and neither contains a merger or integration clause.  The clickwrap agreement includes a provision
stating that A[t]his Agreement
shall be modified only by a written agreement duly executed by Licensor and
Licensee,@ but Athis Agreement@Cthe clickwrap agreementCsays nothing about the software=s functionality; thus, Component Control=s alleged oral promises about the software=s functionality do not modify the clickwrap agreement.  For these reasons, Bubbajunk does not
guide our analysis.

Nelms testified that
Component Control promised that the software would meet Fieldtech=s needs, and he testified that the software failed to meet Fieldtech=s needs.  We therefore hold that
Fieldtech created a fact issue as to whether Component Control breached its
agreement with Fieldtech; thus, the trial court erred by granting Component
Control=s no-evidence summary judgment motion on Fieldtech=s breach of contract claim.  See
Tex. R. Civ. P.  166a(i). 
For the same reasons, the trial court erred by granting Component
Control=s traditional motion for summary judgment, in which Component Control
sought to conclusively negate the Abreach@ element of
Fieldtech=s breach of
contract claim.  See Tex. R. Civ. P. 166a(c).

Component Control also moved
for summary judgment because Fieldtech suffered no injury from Component
Control=s purported breach of contract, arguing cursorily that A[o]nce again, there is no performance issue. . . . There is no injury
because Fieldtech=s change of
heart is not a breach by Component Control.@  Because we have already held
that the summary judgment evidence raises a fact question as to whether
Component Control breached its agreement with Fieldtech, we likewise hold that
the trial court erred by granting summary judgment on Component Control=s Ano injury@ argument.  See id.








c.                  
Breach of warranty[6]

In its motion for summary judgment, Component
Control argued that it conclusively negated the existence of any express or
implied warranties because Component Control disclaimed all such warranties in
the clickwrap agreement.

i.                    
Implied warranties








Contracts for the sale of goods imply warranties
of merchantability and fitness for a particular purpose.  Tex.
Bus. & Com. Code Ann. ' ' 2.314,
2.315 (Vernon Supp. 1994).  To exclude
the implied warranty of merchantability, the exclusionary language must mention
Amerchantability,@ be in
writing, and be conspicuous.  Id. ' 2.316(b) (Vernon 1994). 
Likewise, to exclude an implied warranty of fitness, the exclusionary
language must be in writing and be conspicuous. 
Id.  Language is Aconspicuous@ in a
disclaimer of an implied warranty if it is in larger type or other contrasting
font or color.  Womco, Inc. v.
Navistar Int=l Corp., 84 S.W.3d 272, 279 (Tex. App.CTyler 2002, no pet.); Tex. Bus.
& Com. Code Ann. ' 1.201(10) (Vernon 1994) (defining Aconspicuous@ as Aso written . . . that a reasonable person against [whom] it is to
operate ought to have noticed it@ and providing that language in the body of a form is Aconspicuous@ if it is in
larger or other contrasting type, font, or color).  Whether language is conspicuous is a question
of law for the court to resolve.  Womco,
Inc., 84 S.W.3d at 279.

The warranty disclaimer
Component Control relies on appears in the clickwrap agreement and states that ALicensor shall not be liable to Licensee for any damages
. . . arising out of . . . the breach of any express or
implied warranty.@  This language, which appears on the third
page of the five-page clickwrap agreement, is not in larger type or other
contrasting font or color.  We therefore
hold that it is not Aconspicuous@ as a matter of law and was ineffective to disclaim the implied
warranties of merchantability and fitness. 
See Tex. Bus. & Com.
Code Ann. ' 2.316(b).  Because the disclaimer was the sole basis of
Component Control=s motion for
summary judgment with regard to Fieldtech=s claim for breach of implied warranties, the trial court erred by
granting summary judgment on this claim.[7]








ii.                  
Express warranties

Any affirmation of fact or promise made by the
seller to the buyer that relates to the goods and becomes a part of the basis
of the bargain creates an express warranty that the goods will conform to the
affirmation or promise.  Tex. Bus. & Com. Code Ann. ' 2.313(a)(1) (Vernon 1994).  Likewise, any description of the goods that
is made part of the basis of the bargain creates an express warranty that the
goods will conform to the description.  Id.
' 2.313(a)(2).  It is not necessary to the creation of an
express warranty that the lessor use formula words, such as Awarrant@
or Aguarantee,@
or that the lessor have a specific intent to make a warranty.  Id. ' 2.313(b).

Unlike disclaimers of implied warranties, the UCC
does not require conspicuous language for the disclaimer of express
warranties.  See id. ' 2.316(b).  But a disclaimer of an express warranty must
be communicated to a buyer before the sale is consummated; otherwise, the
disclaimer language is inoperative.  Mercedes-Benz
of N. Am., Inc. v. Dickenson, 720 S.W.2d 844,  852 (Tex. App.CFort
Worth 1986, no writ) (holding automobile dealer=s
disclaimer of express warranties ineffective when buyer was uninformed of
disclaimer until he found it in the car=s
glove box after consummating the sale); see also Womco, Inc., 84 S.W.3d
at 279.








In this case, Fieldtech signed Component Control=s proposal on August 24, 2001.  Nothing in the record suggestsCand Component Control does not argueCthat Fieldtech was made aware of the
clickwrap agreement and its warranty disclaimer until Fieldtech installed the
software in October 2001, two months after the parties had entered into a
binding agreement for the lease of the software.  We therefore hold that the clickwrap
agreement=s
disclaimer of express warranties was ineffective as a matter of law and that
the trial court erred by granting summary judgment with regard to Fieldtech=s claim for breach of express warranty.


d.                 
DTPA claims

Component Control asserted that it was entitled to
a no-evidence summary judgment because there is no evidence of any
misrepresentation or unconscionable act by Component Control, and it asserted
that it was entitled to a traditional summary judgment because Fieldtech=s claim was barred by limitations[8]
and because Component Control had disclaimed all warranties. 








i.                    
Evidence of misrepresentations

The DTPA creates a cause of action for false,
misleading, or deceptive acts or practices, including misrepresentations that
goods have characteristics, uses, or benefits that they do not have.  Tex.
Bus. & Com. Code Ann. ' ' 17.46(b)(7), 17.50(a) (Vernon 2008).  We have already recounted the evidence
presented by Nelms=s affidavit
regarding representations he alleges Component Control made to Fieldtech about
the suitability of the software to Fieldtech=s needs and his averment that the software failed to meet those
needs.  Nelms=s affidavit is some evidence that Component Control made
misrepresentations about the characteristics, uses, or benefits of the
software.  Thus, Component Control was
not entitled to no-evidence summary judgment on Fieldtech=s DTPA claims.

ii.                  
Limitations

A consumer must commence a DTPA action within two
years of the date on which the false, misleading, or deceptive act or practice
occurred or within two years after the consumer discovered or in the exercise
of reasonable diligence should have discovered the occurrence of the false,
misleading, or deceptive act or practice. 
Id. ' 17.565
(Vernon 2002).








Component Control argues that Fieldtech=s DTPA claims are barred by limitations
because Component Control would have made any alleged misrepresentations before
Fieldtech signed the proposal in August 2001, but Fieldtech did not file suit
until October 16, 2003Cmore
than two years later.  Fieldtech replies
that it did not discover that the software was not as Component Control
represented until it sent two employees for software training in January 2002.

Nelms avers in his affidavit that Fieldtech
installed the software on October 19, 2001, but did not use it for the
remainder of the year.  He further stated
that it was not until Fieldtech employees attended training in January 2002
that Fieldtech discovered that the software would not suit Fieldtech=s needs, contrary to Component Control=s alleged representations.  We hold that Nelms=s
affidavit is some evidence that Fieldtech could not have discovered Component
Control=s alleged
misrepresentations until January 2002, less than two years before Fieldtech
filed suit.  Thus, Component Control did
not conclusively establish the affirmative defense of limitations and was not
entitled to a traditional summary judgment on this basis.

iii.                 
DTPA warranty claims








The DTPA does not create any warranties, but it
does create a cause of action for breach of an express or implied
warranty.  Id. ' 17.50(a)(2).  Component Control argues that it is entitled
to summary judgment because the summary judgment evidence conclusively proves
that it effectively disclaimed all express and implied warranties as a matter
of law.  We have already analyzed
Component Control=s
warranty-disclaimer argument in connection with Fieldtech=s breach of warranty claims and
determined that the disclaimer was ineffective. 
For the same reasons, we hold that Component Control is not entitled to
summary judgment on Fieldtech=s
DTPA warranty claims.

e.                  
Conclusion

Having determined that Component Control is not
entitled to summary judgment on Fieldtech=s
breach of contract, breach of warranty, and DTPA claims, we hold that the trial
court erred by granting summary judgment in Component Control=s favor, and we sustain Fieldtech=s first issue.

9.                 
CitiCapital=s
motions








Fieldtech sued CitiCapital for (1) breach of
contract, alleging that CitiCapital made improper and unauthorized charges and
payments under the lease; and (2) a declaratory judgment that the lease was
unenforceable, alleging a complete lack of consideration.  CitiCapital filed a motion for no-evidence
summary judgment, asserting that there was no evidence that CitiCapital made
improper or unauthorized charges or payments under the lease and no evidence
that CitiCapital had breached the lease.[9]  CitiCapital also filed a traditional motion
for summary judgment, arguing that as a matter of law, failure of consideration
is not a defense to Fieldtech=s
obligations under the lease, that Fieldtech was in default, and that Nelms and
Mills were liable on their guarantees for all sums owing under the lease.  CitiCapital filed a further traditional
motion for partial summary judgment on the issue of attorney=s fees. The trial court granted all
three motions and awarded CitiCapital damages of $95,105.55 and attorney=s fees of $28,205.83. 

a.                  
Enforceability of lease

Fieldtech argues that the trial court erred by
granting summary judgment in favor of CitiCapital on Fieldtech=s causes of action because there is at
least a fact issue as to whether Fieldtech revoked its acceptance of the
software, thereby rendering the lease unenforceable.  CitiCapital responds that Fieldtech
specifically waived its right to revoke acceptance of the software.

 

 








i.                    
Hell or high water clause

The finance lease between Fieldtech and
CitiCapital contains what is commonly referred to as a Ahell
or high water@
clause.  A hell or high water clause
requires that the lessee, once it accepts the leased item, must pay its rent in
all events (i.e., come hell or high water) without regard for the proper
function of the item or the conduct of the lessor with respect to the subject
or any other transaction.  Excel Auto
& Truck Leasing, L.L.P. v. Alief ISD, 249 S.W.3d 46, 51 (Tex. App.CHouston [1st Dist.] 2007, pet.
denied).  The UCC provides that hell or
high water clauses are enforceable in finance leases:

(a)
In the case of a finance lease that is not a consumer lease, a term in the
lease agreement that provides that the lessee=s
promises under the lease contract become irrevocable and independent upon the
lessee=s acceptance
of the goods is enforceable.

 

(b)
A promise that has become irrevocable and independent under Subsection (a):

 

(1) is effective and enforceable between the
parties, and by or against third parties including assignees of the parties;
and

 

(2) is not subject to cancellation, termination,
modification, repudiation, excuse, or substitution without the consent of the
party to whom the promise runs.

 

Tex. Bus. & Com. Code Ann. ' 2A.407
(Vernon Supp. 2008).








The lease agreement between
Fieldtech and CitiCapital states that it is Anon-cancellable,@ that Ano defect in or unfitness of the property shall relieve [Fieldtech] of
its obligations under the lease,@ that the breach of any warranty by Component Control will not Ahave any effect whatsoever on the rights and obligations of either
party with respect to the lease,@ and that Fieldtech=s Aobligation
to pay all rent and other sums payable [under the lease is] absolute and
unconditional.@  Thus, Fieldtech agreed to make payments under
the lease come Ahell or high
water,@ that is, even if the software proved to be defective or useless.

ii.                  
Waiver of right to revoke acceptance

Fieldtech points to the comment to section 2A.407,
which states that a hell or high water clause Aremain[s]
subject to . . . the lessee=s
revocation of acceptance (section 2A-517).@  Id. cmt 1.  Section 2A.517 provides that a lessee in a
finance lease may revoke acceptance of goods the nonconformity of which
substantially impairs their value to the lessee if the lessee has accepted them
without discovery of the nonconformity if the lessee=s
acceptance was reasonably induced by the lessor=s
assurances.  Id. ' 2A.517(a)(2) (Vernon 2002).  Fieldtech argues that Nelms=s affidavit creates a fact issue as to
whether CitiCapital=s
assurances reasonably induced Fieldtech to accept the software and whether
Fieldtech effectively revoked its acceptance.








CitiCapital replies that Fieldtech specifically
waived its right to revoke acceptance in paragraph 18 of the lease agreement,
which provides that

[t]o
the extent permitted by applicable law, the LESSEE waives any rights and
remedies conferred upon a LESSEE by UCC Sections 2A-508 through 2A-522,
including (without limitation) the LESSEE=S rights to
. . .  revoke acceptance of the
leased Property . . . . 

 

UCC section 1.302(a) states
that A[e]xcept as otherwise provided in Subsection (b) or elsewhere in this
title, the effect of provisions of this title may be varied by agreement.@  Id.  ' 1.302(a) (Vernon Supp. 2008). 
Thus, an agreement can change the legal consequences that flow from the
provisions of the UCC.  Id. ' 1.302(a) cmt. 1. 
Subsection (b) provides that the obligations of good faith, diligence,
reasonableness, and care may not be disclaimed by agreement.  Id. ' 1.302(b).








Nothing in the UCC precludes
an agreement between a finance-lease lessor and lessee to restrict or waive a
lessee=s right to revoke acceptance under section 2A.517(a)(2).  In this case, the waiver of Fieldtech=s right to revoke acceptance is clear and unambiguous.  Therefore, even if we assume that Fieldtech
attempted to revoke acceptance of the software when it learned the software did
not suit its needs, such revocation did not render the lease unenforceable as a
matter of law because Fieldtech had already waived its right to revoke
acceptance.  We therefore hold that the
trial court did not err by granting summary judgment in favor of CitiCapital on
its counterclaim to enforce the lease and on Fieldtech=s cause of action for a declaration that the lease was unenforceable.

b.                 
Unauthorized and improper charges

Fieldtech argues that Carol Beckham=s affidavit created a fact issue as to
improper and unauthorized charges allegedly made by CitiCapital and, therefore,
created a fact issue as to whether CitiCapital breached the lease
agreement.  In her affidavit, Beckham
listed the nine payments Fieldtech had made to CitiCapital by date, as follows:


 
 
  
 July 2002
 
 
  
 $3,500.00
 
 
 
 
  
 August 2002
 
 
  
 $3,500.00
 
 
 
 
  
 October 2002
 
 
  
 $5,000.00
 
 
 
 
  
 December 2002
 
 
  
 $5,000.00
 
 
 
 
  
 January 2003
 
 
  
 $5,000.00
 
 
 
 
  
 February 2003
 
 
  
 $5,000.00
 
 
 
 
  
 March 2003
 
 
  
 $5,000.00
 
 
 
 
  
 April 2003
 
 
  
 $1,199.80
 
 
 
 
  
 July 2003
 
 
  
 $5,000.00
 
 
 
 
  
 Total
 
 
  
 $38,199.80[10]
 
 


 








Beckham averred that Ait
has been difficult to determine the amount Fieldtech should actually owe under
the lease@ and that
ACitiCapital could never explain the
calculation or the reason for the tax and insurance charges they were making to
Fieldtech.@  Based on Beckham=s
affidavit, Fieldtech argues that Athere
is at least a genuine fact issue regarding the issue of whether CitiCapital
correctly applied the payments made by Fieldtech and whether CitiCapital=s charges under the lease are correct.@ 

The lease agreement called for Fieldtech to make
monthly payments of $3,528.85 beginning 180 days after the first day of the
calendar quarter after Fieldtech installed the software, or June 30, 2002.  The lease was a Anet@ leaseCthat
is, the basic lease payments were Anet@ of any other sums dueCand specifically required Fieldtech to
pay for insurance and taxes in addition to the monthly lease payments; the
lease also gave CitiCapital the right to obtain insurance and charge Fieldtech
for the premiums if Fieldtech failed to obtain the required coverage.  CitiCaptial attached to its motion for
partial summary judgment the affidavit of its employee Wendy Henderson, who
averred that as of April 5, 2005, Fieldtech owed CitiCapital $71,399.60 in past
due payments, $11,459.91 in late charges, and $12,264.04 in insurance premiums
and fees.  








Beckham=s
affidavit is no evidence of unauthorized or improper charges.  Beckham merely testified that Ait has been difficult to determine the
amount Fieldtech should actually owe under the lease,@
not that the amounts paid by Fieldtech actually went to pay unauthorized or
improper charges; at the very most, Beckham only speculates that the payments might
have gone towards improper charges. 
Speculation is not evidence.  Joe
v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 164 (Tex. 2004).  Moreover, Beckham=s
affidavit shows that Fieldtech did not even make the explicitly authorized and
agreed-to net lease payments of $3,528.85 per month.  Over the twelve months that Fieldtech made
lease payments, it should have paid $42,346.20; the payments listed in Beckham=s affidavit total $38,199.80.  Because the money Fieldtech paid to
CitiCapital did not cover the monthly lease payment, no money was left over for
CitiCapital to apply to allegedly improper or unauthorized charges.

We therefore hold that Fieldtech failed to raise a
fact issue on its allegation of improper and unauthorized charges and that
CitiCapital conclusively proved that Fieldtech was in default under the lease
agreement and owed CitiCapital the amounts recited in Henderson=s affidavit.  Thus, the trial court did not err by granting
CitiCapital=s
no-evidence motion for summary judgment on Fieldtech=s
breach of contract claim and its traditional motion on CitiCapital=s counterclaim to enforce the lease.








c.                  
Liability of guarantors

Nelms and Mills argue that because there are fact
issues regarding the enforceability of the lease, CitiCapital is not entitled
to summary judgment on Nelms=s
and Mills=s
guarantees because if an underlying debt is unenforceable and the principal
debtor has no liability, the guarantor likewise has no liability.  See Hercules Exploration, Inc. v.
Halliburton Co., 658 S.W.2d 716, 724 (Tex. App.CCorpus
Christi 1983, writ ref=d
n.r.e.) (AThe
guarantor=s
liability is measured by the principal=s
liability.@).  Fieldtech offers no other argument regarding
the summary judgment against Nelms and Mills on their guarantees.  Because we have held that the lease was
enforceable as a matter of law and that the trial court did not err by granting
summary judgment in favor of CitiCapital against Fieldtech, we also hold that
the trial court did not err by granting summary judgment against Nelms and
Mills on their guarantees.

d.                 
Conclusion

Having determined that the trial court did not err
by granting CitiCapital=s
no-evidence and traditional motions for summary judgment, we overrule
Appellants= second
issue.

                                                                     Conclusion








Having sustained Appellants=
first issue and overruled their second issue, we affirm the trial court=s summary judgments in favor of
CitiCapital, reverse its summary judgments in favor of Component Control, and
remand Fieldtech=s claims
against Component Control for further proceedings.

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  DAUPHINOT, HOLMAN, and GARDNER, JJ.

 

DELIVERED:
August 7, 2008











[1]A
clickwrap agreement derives its name from the similarities between such
agreements and the licenses shrinkwrapped with many software packages.  Realpage, Inc. v. EPS, Inc.,
No. 4:06-CV-251, 2007 WL 2572255, at *5 (E.D. Tex. Sept. 5, 2007).  Clickwrap agreements allow users to manifest
assent to contractual terms presented to the user before installation of
computer software programs.  Id.  Generally, the user must indicate acceptance
of the clickwrap agreement to proceed with the installation.  Id. 
Texas courts recognize the validity of clickwrap agreements.  Id.; see also Barnett v. Network
Solutions, Inc., 38 S.W.3d 200, 203B04 (Tex. App.CEastland
2001, pet. denied).  





[2]In
deposition testimony, Nelms testified that Component Control had demonstrated
the software=s
operation to Fieldtech telephonically and through a webcast. 





[3]The
record does not show that the trial court ruled on Fieldtech=s
special exceptions, but a trial court implicitly overrules special exceptions
when it grants summary judgment on the motion to which the special exceptions
pertain.  Clement v. City of Plano,
26 S.W.3d 544, 550 n.5 (Tex. App.CDallas 2000, no pet.), overruled
on other grounds by Telthorster v. Tennell, 92 S.W.3d 457, 464 (Tex. 2002);
Dagley v. Haag Eng'g Co., 18 S.W.3d 787, 795 n.9 (Tex. App.CHouston
[14th Dist.] 2000, no pet.).





[4]Component
Control argues that the no-evidence portion of its motion obviously gave
Fieldtech adequate notice as to what specific elements lacked evidentiary
support because Fieldtech filed two summary judgment responses attempting to
show evidentiary support for the challenged elements.  Because rule 166a(i) uses the unconditional
term Amust@ in
expressly directing no‑evidence summary judgment movants to state the
elements as to which there is no evidence, we decline to extend a Afair
notice@
exception to rule 166a(i)=s
specific-elements requirement.  See
Mott v. Red=s
Safe & Lock Servs., Inc., 249 S.W.3d 90, 98 (Tex.
App.CHouston
[1st Dist.] 2007, no pet.); Callaghan Ranch, Ltd. v. Killam, 53 S.W.3d
1, 4 (Tex. App.CSan
Antonio 2000, pet. denied) (both rejecting similar Afair-notice@
arguments).





[5]Component
Control argues that absent pleading and proof of ambiguity, fraud, accident, or
mistake, a written agreement presumes that all prior agreements have merged
into the agreement and its provisions cannot be added to, varied, or
contradicted by parol evidence.  But one
of the cases cited by Component Control is a real property case, to which the
UCC does not apply.  See Thompson
v. Chrysler First Bus. Corp., 840 S.W.2d 25, 33 (Tex. App.CDallas
1992, no writ); Tex. Bus. & Com.
Code Ann. ' 2.102
(Vernon 1994).  And while the other case
cited by Component Control was apparently within the scope of the UCC, it did
not reference or discuss the UCC, and the written agreement in that caseCunlike
the writings in this caseCcontained
a clear and unambiguous merger and integration clause.  See i2 Techs., Inc. v. DARC Corp., No.
Civ. 3:02-CV-0327-H, 2003 WL 22205091, at *6 (N.D. Tex. Sep. 23, 2003).





[6]As we
noted above, we will analyze Component Control=s
summary judgment motion on Fieldtech=s breach of warranty claim
under the rules governing traditional motions for summary judgment.





[7]On
appeal, Component Control argues that even if the disclaimer was ineffective,
the only evidence before the trial court Aconfirms@ that
Component Control did not breach any warranties.  But Component Control did not assert this
argument as a ground for summary judgment in the trial court, and summary
judgment cannot be granted except on the grounds expressly presented in the
motion.  Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 204 (Tex. 2002); Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 912 (Tex. 1997). 
Therefore, we cannot affirm the summary judgment on this basis.





[8]Component
Control also moved for no-evidence summary judgment on limitations but, as
Fieldtech observes, it was not entitled to a no-evidence summary judgment on
limitations because limitations is an affirmative defense on which Component
Control would have the burden of proof at trial.  See Tex.
R. Civ. P. 166a(i) (providing that a party may move for no-evidence
summary judgment on a claim or defense on which an adverse party would have the
burden of proof at trial).





[9]As it
did with Component Control=s no-evidence motion,
Fieldtech challenges the sufficiency of CitiCapital=s
no-evidence motion.  But unlike Component
Control=s
motion, CitiCapital=s
specifically identifies elements of Fieldtech=s
causes of action for which there is no evidence.  Therefore, we reject Fieldtech=s
insufficiency argument with regard to CitiCapital=s
no-evidence motion.  See Tex. R. Civ. P. 166a(i).





[10]Beckham
averred that these payments added up to $43,199.80.